IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00118-MOC-WCM

| | | |
|---|---|---|
| KENNETH DAWKINS, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | **FIRST AMENDED COMPLAINT** |
| | ) | (JURY TRIAL REQUESTED) |
| HARRAH'S NC CASINO COMPANY, | ) | |
| LLC, | ) | |
|    Defendant. | ) | |

Pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiff Kenneth Dawkins, by and through the undersigned counsel, files his amended complaint against Defendant alleging the following:

## PARTIES AND JURISDICTION

1.  Kenneth Dawkins ("Dawkins" or "Plaintiff") filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on or about February 3, 2020 alleging that Harrah's NC Casino Company, LLC ("Harrah's NC" or "Defendant") violated the Civil Rights Act of 1964 by refusing to provide Dawkins a reasonable religious accommodation.

2.  EEOC investigated Dawkins' Charge of Discrimination and dismissed it on December 31, 2020, issuing Dawkins a Right to Sue Letter that same date. The December 31, 2020 Right to Sue Letter is attached to this complaint as Exhibit 1.

3. Dawkins timely filed his original complaint against Harrah's NC on March 26, 2021 in state court alleging violations of the Civil Rights Act of 1964.

4. Defendant removed Plaintiff's original complaint to this Court on April 22, 2021.

5. Defendant timely filed its Partial Motion to Dismiss on May 13, 2021.

6. Dawkins filed an additional Charge of Discrimination with the EEOC on May 18, 2021, alleging that Harrah's NC violated the Civil Rights Act of 1964 by engaging in additional acts of harassment and retaliation.

7. EEOC investigated the May 18, 2021 Charge of Discrimination and dismissed it on May 24, 2021, issuing a Right to Sue Letter that same date. The May 24, 2021 Right to Sue Letter is attached to this complaint as Exhibit 2.

8. Dawkins is a resident and citizen of Jackson County, North Carolina.

9. Harrah's NC is a limited liability company formed pursuant to and existing under the laws of the State of North Carolina. Its registered office is in Wake County, North Carolina.

10. By virtue of a contract ("the Management Agreement") between Harrah's NC and the Eastern Band of Cherokee Indians ("EBCI"), Harrah's NC operates two casinos for the EBCI known as Harrah's Cherokee Casino Resort ("the Casino") and Harrah's Cherokee Valley River Casino and Resort ("Valley River"), both of which are located on property entrusted to or owned and controlled by the EBCI.

11. The Casino is situated within Jackson County, North Carolina. Valley River is situated within Cherokee County, North Carolina.

12. The EBCI is not a member of Harrah's NC.  The EBCI has no ownership interest in Harrah's NC, whose sole members are Caesars Entertainment Operating Company, LLC ("CEOC, LLC"), and Harrah's Management Company ("HMC").

13. EBCI is not a member of CEOC, LLC or HMC, and has no ownership interest in either entity.

14. Under the Management Agreement, Harrah's NC is responsible for managing the Casino and Valley River, including supervising and directing the work of all employees of the Casino and Valley River by and through a "General Manager" employed by Harrah's NC.

15. Except for the General Manager (who is the only employee of Harrah's NC that works at the Casino or at Valley River), the remaining employees who work at the Casino and Valley River are employees of the Tribal Casino Gaming Enterprise (the "Enterprise") and are considered "Enterprise Employees".

16. The Enterprise is a commercial enterprise and instrumentality of the EBCI.

17. Upon information and belief, the EBCI has ceded to Harrah's NC all right to conduct any and all business and other affairs in connection with the operation, management and maintenance of the Casino and Valley River. Harrah's NC, and not the EBCI or the Enterprise, has the exclusive responsibility and authority to

direct the selection, hiring, training, control, discharge, and work location assignment of all employees in connection with the Casino and Valley River, including Enterprise Employees.

18. Pursuant to the Management Agreement, Harrah's NC covenants that it will at all times comply with all legal requirements, including without limitation any applicable federal or state statutes.

19. Harrah's NC is one of Dawkins' employers due to the level of control and supervision that it exercises over Dawkins and all other employees (including supervisory employees) working at the Casino and Valley River. As such, Harrah's NC may incur legal liability under Title VII of the Civil Rights Act of 1964 and other applicable federal and state workplace laws. See e.g., *Butler vs. Drive Automotive Industries of America, Inc.*, 793 F.3rd 404 (2015).

20. Harrah's NC has consented to the civil jurisdiction of the courts and laws of the State of North Carolina for civil claims by Enterprise Employees by virtue of, *inter alia*, its status as a North Carolina Limited Liability Company and because of its consent to participation in prior North Carolina civil cases involving claims by Enterprise Employees. See e.g., *Davis v. Harrah's Cherokee Casino,* 362 N.C. 133, 655 S.E.2d 392 (2008).

21. Defendant is the real party in interest in this matter. Neither EBCI nor the Enterprise are real parties in interest or a necessary party in this particular matter. *Lewis v. Clarke*, 580 U.S. ___, 137 S.Ct. 1285 (2017).

4

22. Harrah's NC does not enjoy or have any type of immunity from lawsuit by Enterprise Employees.

23. This Court has subject matter jurisdiction over the cause(s) of action alleged herein and personal jurisdiction over Harrah's NC.

## FACTS

24. Dawkins is an Enterprise Employee who has worked for 10 years in various roles at both the Casino and Valley River. He has worked as a table games dealer for the vast majority of that time and currently works as a table games dealer.

25. Dawkins has enjoyed good job performance as an Enterprise Employee, achieving the designation of "Role Model" while working at Valley River.

26. The "Role Model" designation is reserved for Enterprise Employees whose job performance is considered exemplary. Enterprise Employees achieving "Role Model" status regularly enjoy year-end bonuses in recognition of that status.

27. Dawkins is well-qualified to perform the duties of table games dealer, based on his work history and record of performance achievement at Valley River.

28. Upon information and belief, Dawkins is the only adherent of the Moorish American religion at the Casino.

29. Defendant's supervisors at Valley River accommodated the requirements of Dawkins' religious faith, which included observing a Sabbath day from sundown on Friday night to sundown on Saturday night.

5

30. On October 1, 2019, Dawkins applied for a transfer from Valley River to the Casino. Such a transfer would have provided Dawkins with a more senior table games dealer position (a promotion), a more stable schedule, an increase in pay (a raise), and the opportunity to work closer to his home in Jackson County.

31. During the interview process for his transfer request, Dawkins was informed by Defendants' managers and Human Resources personnel at the Casino, including a supervisor named Mitchell, Cathy Owle (HR Manager), and Warren Snyder (Employee Relations associate), that Dawkins would not be provided a religious accommodation because "if we [the Defendant] respect your [Dawkins'] religion, we [the Defendant] will have to respect every other table games dealer who says they can't work because of their religious beliefs."

32. Dawkins was also told by Defendant's Employee Relations associate Warren Snyder that the Defendant was not required to respect Dawkins' religious beliefs in the workplace.

33. Dawkins was also told by Defendant's Human Resources Manager, Cathy Owle, that "you [Dawkins] might be able to snow Murphy Casino [Defendant's supervisors and managers at Valley River] but you're not going to snow us [Defendant's supervisors and managers at the Casino]. We [Defendant's supervisors and managers at the Casino] are only offering the job if you [Dawkins] agree to any day and shift."

34. Owle's and Snyder's statements indicated or implied that (i) Defendant would treat any other table games dealer who did not request a religious accommodation, but who sought a similar transfer, more favorably than Dawkins was treated, and (ii) Dawkins was somehow asking for a religious accommodation for an improper purpose and, thus, expressed hostility toward Dawkins' request.

35. Defendant's human resources and management personnel at the Casino also threatened to fire Dawkins if he kept pushing the request for religious accommodation and ripped up Dawkins' transfer request and audition paperwork in front of Dawkins.

36. On October 15, 2019, the Defendant formally denied Dawkins' transfer request because Dawkins would not agree to work on the Sabbath day, even though Defendant's supervisors at Valley River had no problem supporting Dawkins' request for religious accommodation regarding not working on the Sabbath day.

37. The humiliating, insulting, and discriminatory nature of Defendant's denial of Dawkins transfer request, coupled with other attendant negative impacts of being denied the transfer, began taking their toll on Dawkins.

38. On February 29, 2020, and during the pendency of EEOC's investigation of this matter (prompted by the EEOC Charge of Discrimination filed on or about February 3, 2020), Dawkins resigned his position at River Valley.

39. On March 9, 2020, Carl Renaldi, Defendant's Table Games Manager at the Casino, contacted Dawkins and offered him a table games dealer position that included observance of his religious beliefs (i.e., Fridays off).

40. Dawkins was unsure why Defendant reversed its previous denial of Dawkins' transfer request but speculated that Defendant appreciated the unfairness and illegality of its decision and chose to address it by re-hiring Dawkins into the position that he sought through his transfer request.

41. Dawkins accepted this offer and returned to work for Defendant at the Casino. However, the damage had already been done: Dawkins suffered an intervening loss of increased salary and higher travel, childcare and other costs that could have been avoided had the Defendant simply, and appropriately, processed his transfer request in the normal course of business.

42. At first, Dawkins was pleased that Defendant agreed to re-hire him into the position that he originally sought through transfer. However, Dawkins soon realized that his situation became much worse by moving to the Casino, as he became the victim of what appeared to be an unrelenting pattern of harassment, retaliation, and hostility (some instances of which involved religious overtones).

43. For example, in July 2020, a co-worker at the Casino, Tiffany Rogers, accused Dawkins of "not believing in God or prayer for no reason" which was extremely insulting to Dawkins and which he interpreted as pressure to adhere to Christianity rather than his chosen religious belief.

44. Dawkins began getting reprimanded and written-up for petty workplace issues and minor rules violations, treatment that he had never encountered during his tenure with Valley River.

45. Dawkins noticed that standard requests for time off from work also came under increased scrutiny by Defendant's supervisors and managers at the Casino. In October 2020, Dawkins requested five days of bereavement leave (a benefit authorized for Defendant's Casino employees), but his request was inexplicably denied by Defendant's management at the Casino.

46. In November 2020, two of Defendant's managers at the Casino instructed Dawkins to stop performing a task in a certain manner because the managers believed that method to be inconsistent with internal control protocols.  However, Dawkins' chosen method was actually consistent with said protocols, and Dawkins pointed this out to the managers. For his *adherence* to Defendant's protocol, and Dawkins' attempt to clarify this with the managers, he was accused of insubordination by Defendant's managers at the Casino.

47. Dawkins began to feel that Defendant's supervisors and managers at the Casino were intentionally attempting to goad or lure him into violating rules or standards, or were focusing unusually and unreasonably close attention on Dawkins' performance, in the hopes that he would step out of line (however slight that mis-step might be) which would then be a basis for the Defendant to fire

Dawkins.

48. There are numerous other examples of this treatment, but the most trivial and outrageous involved Defendant's supervisor at the Casino, Johnny Crisp, yelling and screaming at Dawkins because Dawkins happened to have not heard Crisp's muffled instruction (uttered from behind Crisp's mask) in December 2020. For not being able to clearly hear Crisp, Dawkins was reprimanded.

49. On March 29, 2021, Defendant's manager Josh Howell seemed to ridicule the fact that Dawkins had previously filed an EEOC complaint against Harrah's NC by joking around with Dawkins about filing a harassment claim against a co-worker for making a comment to me, and tauntingly saying that "he [Howell] would be the witness."

50. On January 1 and 11, 2021, Dawkins' supervisors failed to properly relieve him for his scheduled breaks, leaving Dawkins in his position for two hours past his breaktime. The reason for the oversight is still unknown to Dawkins and was never explained to him by Defendant's supervisors.

51. On April 6, 2021, Defendant's employee Mike Zepeda called Human Resources representative Donna Paul and accused Dawkins of not giving Zepeda a break, claiming that Dawkins skipped Zepeda near the end of Dawkins' break stream and went home. Although the claim was untrue, and despite extensive video surveillance coverage throughout Defendant's property (Dawkins' workplace), Defendant's managers accepted Zepeda's version of events and reprimanded

Dawkins without conducting any investigation or review of video footage which would have disproved Zepeda's claim.

52. The negative treatment by Defendant's supervisors, managers, and other personnel have taken its toll on Dawkins, who suffers emotional distress and anxiety of living under the constant specter of being unfairly terminated and for being discriminated and retaliated against, and harassed, due to Dawkins' request for religious accommodation and his religious beliefs.

53. Harrah's NC maintains an employment policy that prohibits discrimination that applies to everyone, "including officers, managers, supervisors, co-workers, non-employee visitors and vendors." The policy specifically states that "supervisors and managers are covered by this policy and are prohibited from engaging in any form of harassing, discriminatory or retaliatory conduct."

54. Harrah's NC promises in its policy that it will investigate all reports of discrimination, harassment and retaliation and take "prompt, appropriate remedial action" and the offender "will be disciplined up to and including Separation of Employment."

55. Defendant (i) denied Dawkins initial request for a transfer for the express reason that Defendant would not accommodate Dawkins' request for religious accommodation at the Casino even though Dawkins' request for religious accommodation was honored at Valley River, (ii) allowed its supervisors, managers, and other personnel to treat Dawkins in a discriminatory manner after Dawkins

11

made Defendant aware of Dawkins' religious beliefs (via request for religious accommodation), (iii) retaliated against Dawkins for filing his discrimination complaint with EEOC by subjecting him to reprimands and write-ups for alleged violations of Defendant's workplace policies and rules, and (iv) took no remedial or adverse action to address said discriminatory or retaliatory conduct by Defendant's employees (including supervisors) toward Dawkins.

56. Defendant's relevant and wrongful acts and omissions are not consistent with Defendant's own policies and, upon information and belief, the policies of the Enterprise or EBCI.

57. Upon information and belief, Defendant's relevant and wrongful acts and omissions were not authorized, approved, endorsed, or condoned by the Enterprise or EBCI; as such, Defendant is solely responsible for its own acts and omissions.

## FIRST CAUSE OF ACTION – RELIGIOUS DISCRIMINATION
## (Failure to Accommodate)

58. Plaintiff re-alleges and incorporates herein all allegations set out in the paragraphs above.

59. Harrah's NC has a duty to provide Dawkins a work environment free of religious discrimination, and to honor his reasonable requests for religious accommodation.

60. Plaintiff's bone fide religious practice (i.e., not working on his Sabbath) conflicted with Defendant's employment requirement (i.e., working on Friday night).

61. Plaintiff brought his bone fide religious practice to Defendant's attention, and Defendant applied an adverse employment action (i.e., refusal of his transfer request) to Plaintiff based solely on that bone fide religious practice.

62. Harrah's NC breached its duty by its acts and omissions as alleged herein.

63. Harrah's NC knew or should have known that its supervisors, managers, and other personnel had engaged in discriminatory conduct as it relates to Dawkins.

64. Harrah's NC knew or should have known that its personnel violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, by denying Dawkins' transfer request on the express basis that Harrah's NC does not honor religious accommodation requests and would not honor Dawkins' religious accommodation request.

## SECOND CAUSE OF ACTION – RELIGIOUS DISCRIMINATION
### (Disparate Treatment)

65. Plaintiff re-alleges and incorporates herein all allegations set out in the paragraphs above.

66. Harrah's NC has a duty to provide Dawkins a work environment free of religious discrimination, and to not subject Dawkins to disparate treatment based solely on his religious beliefs.

13

67. Plaintiff is a member of or practices a particular religion, that being the Moorish American religion.

68. Plaintiff was well-qualified to perform the duties of the job to which he desired to transfer (i.e., table games dealer).

69. Defendant refused Plaintiff's transfer because of the tenets of Plaintiff's religion, but indicated or implied that other table game dealers who did not adhere to similar religious requirements (e.g., not working on a Friday night Sabbath) would be granted a transfer.

70. Defendant's managers who made the decision to deny Plaintiff's transfer requests were aware of Plaintiff's religious beliefs and requirements.

71. Harrah's NC breached its duty by its acts and omissions as alleged herein.

72. Harrah's NC knew or should have known that its supervisors, managers, and other personnel had engaged in discriminatory conduct as it relates to Dawkins.

73. Harrah's NC knew or should have known that its personnel violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, by subjecting Dawkins to disparate treatment based on his religious beliefs and requirements.

## THIRD CAUSE OF ACTION – RETALIATION

74. Plaintiff re-alleges and incorporates herein all allegations set out in the paragraphs above.

75. Harrah's NC has a duty not to retaliate against Dawkins for engaging in protected activity, such as filing EEOC complaints in protest of unlawful discrimination.

76. Plaintiff engaged in such protected activity by filing an EEOC complaint against Defendant on or about February 3, 2020.

77. Defendant was informed of Plaintiff's engagement in said protected activity.

78. Defendant took materially adverse actions against Dawkins by subjecting him to reprimands and write-ups for petty workplace issues and minor rules violations *only after Dawkins' EEOC complaint was filed and after his eventual transfer to the Casino*, treatment that he had never encountered during his tenure with Valley River.

79. Defendant's materially adverse actions against Dawkins were causally connected to Dawkins' engagement in protected activity reflected by (i) the temporal proximity between Dawkins' engagement in protected activity, his eventual transfer to the Casino, and the beginning of Defendant's series of materially adverse actions taken against Dawkins; (ii) the absence of any substantive negative performance history with Harrah's NC prior to Dawkins' engagement in protected activity, (iii) a taunting reference made by one of Defendant's managers to Dawkins' engagement in protected activity (i.e., filing an EEOC complaint) and (iv) and other actions and conduct by Defendant, its managers, supervisors and employees.

80. Harrah's NC breached its duty by its acts and omissions as alleged herein.

81. Harrah's NC knew or should have known that its supervisors, managers, and other personnel had engaged in retaliatory conduct as it relates to Dawkins.

82. Harrah's NC knew or should have known that its personnel violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a), by retaliating against Dawkins for engaging in protected activity in protest of Harrah's NC unlawful discriminatory practices.

## FOURTH CAUSE OF ACTION – RELIGIOUS DISCRIMINATION
### (Harassment)

83. Plaintiff re-alleges and incorporates herein all allegations set out in the paragraphs above.

84. Harrah's NC has a duty to provide Dawkins a work environment free of religious harassment, and to not subject or allow others under Defendant's control to subject Dawkins to religious harassment.

85. Plaintiff is a member of or practices a particular religion, that being the Moorish American religion

86. Upon information and belief, Plaintiff is the only adherent of the Moorish American religion at the Casino.

87. Plaintiff was subjected to unwelcome statements and conduct by Defendant's employees, including Defendant's managerial employees.

16

88. The unwelcome statements and conduct suffered by Plaintiff were based on his religion, including, but not limited to, (i) a statement that Plaintiff did not believe in God or prayer for no good reason (uttered by another of Defendant's employees), (ii) being refused a transfer after Defendant's managers and supervisors discussed Plaintiff's religious beliefs and requirements, and (iii) being subjected to Defendant's manager's hostility toward to his religion (e.g., tearing up transfer paperwork in Dawkins' face; implying that Dawkins was somehow asking for a religious accommodation for an improper purpose, thus questioning Dawkins' sincerity regarding same).

89. The conduct was so severe or pervasive that Dawkins reasonably found the work environment to be hostile or abusive.

90. A basis exists for holding Defendant liable for this conduct, as, at the very least, Defendant's managers and supervisory personnel engaged in the conduct complained of and applied Defendant's policy of not even considering religious accommodation requests from table games dealers at the Casino.

91. Harrah's NC breached its duty by its acts and omissions as alleged herein.

92. Harrah's NC knew or should have known that its supervisors, managers, and other personnel had engaged in harassing conduct as it relates to Dawkins.

93. Harrah's NC knew or should have known that its personnel violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), by subjecting Dawkins to harassing conduct based on his religion.

## PUNITIVE DAMAGES

94. Plaintiffs re-alleges and incorporates herein all allegations set out in the paragraphs above.

95. Defendant engaged in intentional discrimination, and with malice toward and with reckless indifference to Plaintiff's legal rights, by acknowledging the validity of Plaintiff's accommodation request but categorically denying Defendant's requirement to accept and honor the request.

96. A link exists between the discrimination and Defendant – here, Defendant's policy of not honoring religious accommodation requests - such that the Defendant authorized or approved the conduct.

97. Defendant's managers engaged in intentional discrimination against Plaintiff while acting in the scope of their employment.

98. Harrah's NC, by its actions and omissions as alleged herein, engaged in conduct such to support an award of punitive damages. See *Ward vs. Autozoners*, 958 F.3d 254 (2020).

WHEREFORE, Plaintiff prays that this Court:

1. Award compensatory, incidental, emotional distress, pain and suffering and other allowable damages;

2. Award appropriate punitive damages to Plaintiff;

3. Award other appropriate equitable relief to Plaintiff;

4. Award reasonable attorney fees and costs, and order that Defendant pay same to Plaintiff;

5. Order interest on Plaintiff's damages as allowed by law;

6. Allow a jury trial; and

7. For such other or further relief as this Court shall deem just and appropriate.

This the 27th day of May, 2021

/s/Eric C. Williams
Eric C. Williams
N.C. State Bar No. 40813
ALLEN, STAHL + KILBOURNE, P.A.
20 Town Mountain Road, Ste 100
Asheville, NC 28801
828-254-4778
828-254-6646 fax
cwilliams@asklawnc.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing First Amended

Complaint upon the party shown below by depositing a copy of the same in the United States

mail, postage prepaid, addressed as shown below, or email addressed as shown below:

Tracy L. Eggleston
COZEN O'CONNOR
One Wells Fargo Center, Suite 2100
301 S. College Street
Charlotte, NC 28202
Telephone: 704-376-3400
Facsimile: 704-334-3351
E-mail: teggleston@cozen.com
*Attorneys for Defendant Harrah's NC*
*Casino Company, LLC*

This the 27th day of May, 2021.

/s/*Eric C. Williams*
Eric C. Williams